**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

|   |   |
|---|---|
| PATRICIA HILL and PATRICIA HILL as Administratrix of the Estate of FRED HILL, ) ) ) ) | |
| Plaintiffs, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No. 04-1282-MLB |
| ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) ) | |

**MEMORANDUM DECISION**

**I. INTRODUCTION**

This matter comes before the court for decision after a trial to the court February 20, 2007 through February 23, 2007. Upon conclusion of the trial, the parties were offered an opportunity to submit briefs. (Docs. 61, 63.)[1] Pursuant to Rule 52, the court makes the following findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a) (requiring a court to state its findings of fact and conclusions of law in "all actions tried upon the facts without a jury").

This is a "wrongful death nursing negligence" case (Doc. 48 at 12) and damages were originally sought for pain and suffering ($250,000), wrongful death ($250,000), and actual compensatory damages

---

[1] Defendant's submission is actually a renewed motion for judgment as a matter of law, filed pursuant to Federal Rule of Civil Procedure 52(c), and plaintiff's submission is a response to that motion. During the trial, defendant orally moved for judgment as a matter of law pursuant to Rule 52(c), and again so moved at the close of trial. In lieu of ruling on the oral motion, plaintiff was offered a chance to submit written briefing with respect to plaintiff's position.

($29,649.98). (Doc. 48 at 6.) Over the course of the trial, plaintiff Patricia Hill, as Fred Hill's heir, withdrew her wrongful death claim.[2] For the claim for pain and suffering damages, plaintiff Patricia Hill, as administratrix of Fred Hill's estate, contends defendant failed to prevent and treat constant and severe pain from a surgical wound and a pressure sore. (Doc. 48 at 6.)

## II. FINDINGS OF FACT

Fred Hill was admitted to the Wichita Veterans Affairs Medical Center ("VA Medical Center") on June 29, 2001 for postoperative pain control, wound care, and smoking cessation. Earlier in June 2001, Hill had an infected vascular graft removed from his right stump and the operative wound had itself become infected. Hill was an inpatient at the VA Medical Center until he was transferred from the VA Medical Center to the St. Joseph campus of the Via Christi Medical Center on July 20, 2001.[3] On July 25, 2001, while at the Via Christi Medical Center, Hill passed away.

Hill was a double amputee, bedridden patient who had also been diagnosed with peripheral vascular disease ("PVD"). PVD causes hardening of the arteries which leads to obstruction of the blood

---

[2] The court heard defense testimony from many of Hill's caretakers at the VA Medical Center, including his physicians, nurses, nurses aide, discharge planner, and dietician. After the wrongful death claim was withdrawn at trial, much of this testimony became irrelevant to the final disposition of this case and will not be detailed here. At trial, defendant was also advised that presentation of its expert witness' testimony was not necessary.

[3] Patricia Hill, Fred Hill's wife, testified that, although she was billed for the services of the Via Christi Medical Center, she has never paid the bill and has not been sued on the bill. Patricia Hill testified that six years had passed since she was billed for Fred Hill's services at the Via Christi Medical Center.

supply to body tissues. Tissue that has been deprived of its blood supply may "die" as a result of this failure. Dead tissue may also yield damage to nerves and severe neuropathic-type pain. PVD is exacerbated by smoking, hypertension, diabetes, and high cholesterol levels. Hill had also been diagnosed with substance abuse, spinal stenosis and hypertension and he had a high triglyceride level. Hill's condition was additionally affected by his status as a cigarette smoker.

At some point over the course of his stay at the VA Medical Center, Hill developed pressure sores on his buttock and groin area. A pressure sore to his left buttock is first noted in his medical record on July 4. Pressure sores are more easily developed by a patient like Hill, because of his bedridden status and his decreased vascular circulation due to his PVD. Hill suffered from pain from his right stump surgical wound and from these pressure sores.

Hill consistently complained of pain over the course of his stay at the VA Medical Center, although the amount of pain he reported varied from day to day. On June 29, the first day of Hill's admission to the VA Medical Center, Hill rated his pain from his surgical wound as a ten, the highest rating on a one to ten pain rating scale. On July 2, Hill complained of pain from his surgical wound and buttocks and rated the pain as a four but later in the day rated his pain at ten. On July 3, Hill complained of a continuous aching pain from his surgical wound with a rating of one, but he reported to his physician that he had adequate pain control. On July 4, Hill rated his pain at five and on July 5, Hill complained of pain from his surgical wound, but his physician noted that Hill's pain seemed improved. On July 6,

Hill rated his pain at level ten "all over" at the beginning of the day, but by the end of the day he had no complaint of pain. On July 7 and 8, Hill had no specific complaint of pain but only general complaints of pain from his surgical wound. On July 9, Hill complained of continuous pain, but the location of the pain is not specified. On July 10, Hill rated the pain from his surgical wound at a level ten. On July 11, Hill rated his pain from his surgical wound at a seven, on July 12 he rated his pain as an eight to ten, and then, later on July 12 and again on July 13, Hill rated his pain from his surgical wound as a four to five. On July 15, Hill had no complaints of pain throughout the day, but in the evening complained of pain from his surgical wound. On July 16, Hill rated his pain at a six from his hip. On July 17, Hill reported that his pain was shooting and severe, but also a continuous aching of his surgical wound, and he rated his pain at a four. On July 18, Hill also rated his pain at a four and complained of continuous aching from his surgical wound. On July 19, Hill rated his pain from his surgical wound at an eight to nine. On July 20, the day Hill was discharged to the Via Christi Medical Center, Hill rated his pain at a four.

Plaintiff offered several witnesses who also testified concerning Hill's pain while at the VA Medical Center. Denise Walton, Hill's daughter, testified that she visited Hill at the VA Medical Center daily from July 3 to July 7.[4] On July 3 and 4, Walton felt that she

---

[4] There is some dispute concerning the dates Walton visited Hill at the VA Medical Center. At her deposition, Walton testified that she visited Hill daily from July 3 through the July 7 and then did not see Hill again until July 20. At trial, Walton testified that she visited Hill daily from July 3 through July 8 and then returned Tuesday July 10 and saw Hill daily for the rest of that week. Because

could tell that Hill was in pain and Hill also expressed to her that he was in pain.  Walton stated that defendant dealt with Hill's complaints of pain by sedating Hill.  On July 5, Hill again complained to Walton that he was not receiving enough pain medication and on July 6 Walton was told Hill's pain medication was going to be increased.  Walton testified that Hill was never given pain medication while she was present and that no physician at the VA Medical Center ever spoke to her about pain medication.  Hill's neighbor, Donna Osburn, visited Hill at the VA Medical Center twice during his stay there and testified that during her first visit, Hill expressed to her that he was in pain from pressure sores and his surgical wound.

Patricia Hill, Fred Hill's wife, testified that she visited Hill most of the days he was at the VA Medical Center.  Patricia Hill testified that Fred Hill was alert for only a few days while he was at the VA Medical Center and that he was groggy and "knocked out" most of the time, especially from July 6 through the end of his stay.  She testified that Hill never complained of pain while he was at the VA Medical Center and that he was "out" and not in pain because he was asleep most of the time.  Like Walton, Patricia Hill also stated that she never saw Fred Hill being given any medication.

Over the course of his stay, Hill was medicated for pain each day.[5]  On the day of admission, Hill's pain medication was a

---

Walton testified only about her perception of Hill's care from July 3 through July 7, any dispute about Walton's visits with Hill beyond these dates is immaterial.

[5] Hill's record from the VA Medical Center contains no Medication Administration Record ("MAR").  Plaintiff's expert testified that an MAR typically states the name of the medication ordered for a particular patient and, when that medication is

hydrocodone/acetaminophen tablet (lortab).  On June 30, Hill was medicated for pain with lortab, morphine, and MS contin.  On July 1, defendant changed Hill's pain medications to change from morphine to a fentanyl patch because of hallucinations which Hill's physicians thought could have been due to the morphine.  Hill remained on this pain medication regimen on July 2.  On July 3, Hill's physicians increased the dose of Hill's fentanyl patch and on July 4, Hill's pain medications were changed again to try oxycodone instead of lortab to avoid acetaminophen overload.  On July 5, Hill's new pain medication regimen was implemented.  Hill's physicians also added gabapentin for Hill's chronic pain and Hill's physicians felt his pain seemed improved.  On July 6, Hill's physicians increased the dosage of the oxycodone and also prescribed acetaminophen as needed for intermittent pain control.  On July 7, Hill's pain medications remained the same but the dosage of his gabapentin was changed.  On July 8, Hill was also given tylenol, but otherwise his pain medications remained the same.  Also on July 8, Hill's physicians ordered a TENS unit[6] to help

---

administered, the time and amount is noted on the MAR by the administering clinician.  Hill's record has a pharmacy list that indicated which medications were ordered from the pharmacy each day, and each day's nursing progress notes at times note that nurse's administration of a particular medication.  Plaintiff's expert testified that it was below the standard of care to not have an MAR in the VA Medical Center's medical record for Hill, but there was no testimony concerning how such a breach would have contributed to Hill's injury.

[6] A TENS unit is an external electrical impulse system used to assist with pain control.  On July 9 and 10, Hill refused the TENS unit.  Another trial of the TENS unit was scheduled for July 12, but Hill also refused the TENS unit at that time.  Finally, Hill used the TENS unit on July 13, with modest success, but the TENS unit was removed on July 14 because Hill was too restless for the electrical nodes to stay attached.

with Hill's pain from his surgical wound. On July 9, Hill's pain medications remained the same, but this changed on July 10.

On July 10, Hill underwent a debridement of his surgical wound to remove dead tissue. As a result, he experienced a spike in his pain. Because Hill received no relief in his pain from oxycodone and acetaminophen, Hill's physicians began to consider another change to Hill's pain medications. On July 11, Hill was continued on his ordered pain medication and the dosage of his fentanyl patch was increased. On July 12 and 13, Hill's pain medications remained unchanged. On July 14, Hill's prescription for gabapentin was doubled in dosage. On July 15 and 16, Hill was continued on his pain medications. On July 17, the dosage of Hill's gabapentin was again increased, but otherwise Hill's pain was being treated with the same pain medications. Hill's four pain medications (fentanyl patch, oxycodone, acetaminophen, and gabapentin) were continued at their doses for the remainder of Hill's stay.

Plaintiff offered the testimony of an expert witness, Rise Morris, who is a registered nurse. Morris testified that Hill's pain helped contribute to the development of pressure ulcers because his pain caused decreased movement. Decreased movement contributes to the development of pressure ulcers because blood pools over bony prominences which are in contact with the bed. After a review of Hill's complaints of pain and the VA Medical Center's drug treatment of that pain, however, Morris conceded that defendant did not violate

the nursing standard of care with respect to pain.[7]

### III.  CONCLUSIONS OF LAW

Under Kansas law, the essential elements for a prima facie case of nursing negligence are: 1) defendant owed a duty to Mr. Hill to protect him from the injury for which plaintiff complains; 2) defendant failed to perform that duty; and 3) an injury to Mr. Hill proximately resulted from the failure. Mellies v. Nat'l Heritage, Inc., 6 Kan. App. 2d 910, 912, 636 P.2d 215, 218 (Kan. Ct. App. 1981) (citing George v. Breising, 206 Kan. 221, 226, 477 P.2d 980, 987 (1970)).  Expert testimony is necessary to establish all three elements of the malpractice action. Wozniak v. Lipoff, 242 Kan. 583, 587, 750 P.2d 971, 975 (1988).[8]

Defendant owed Hill a duty of care to protect Hill from pain and suffering.  The injury plaintiff alleges Hill suffered is the pain resulting from his surgical wound and pressure sores while being treated by defendant.  It is important to note that the injury plaintiff complains was caused by defendant is very narrow in comparison to the testimony heard in this case.

It is clear, however, that defendant did not breach its duty of care to Hill.  Plaintiff's expert testified that the standard of care

---

[7] Plaintiff's response states that Morris' opinion was contingent on a MAR showing that the pain medications were administered at the times ordered. At trial, however, Morris did not frame her opinion in this manner and clearly stated that defendant did not violate the nursing standard of care with regard to pain.

[8] An exception to this rule exists where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience. Webb v. Lungstrum, 223 Kan. 487, 490, 575 P.2d 22, 25 (1978); Karrigan v. Nazareth Convent & Acad., Inc., 212 Kan. 44, 48-51, 510 P.2d 190, 196 (1973). Plaintiff does not contend that this exception applies.

was not violated with respect to pain.  Plaintiff's expert reached this conclusion after a thorough review in court of the medical records produced by the VA Medical Center.  In addition, there was testimony that Hill was not in pain a majority of the time he was at the VA Medical Center.  In fact, Patricia Hill testified that Hill was not in pain and asleep the majority of the time he was being treated by defendant.  Although the majority of the evidence adduced at trial showed that Hill did experience pain, the testimony of plaintiff's expert was clear that defendant did not breach the standard of care with respect to management of Hill's pain.  Therefore, plaintiff did not meet its prima facie burden of proof.

At trial, there was considerable testimony regarding Hill's nutrition, hydration, and mobility while at the VA Medical Center and how these factors lead to the development of pressure sores which then lead to pain.  Because, however, plaintiff's expert ultimately conceded that the management of Hill's pain did <u>not</u> fall below the standard of care, a discussion of Hill's nutrition, hydration, and mobility and how those factors caused Hill's pain in the first instance is not necessary.  The ultimate issue is whether defendant breached its duty to protect Hill from pain and suffering, which is the injury of which he complains.  Plaintiff's expert testified that defendant did not fail to meet this standard of care.  Further, it is clear that the overwhelming majority of the pain Hill did experience was a result of his surgical wound, not the pressure ulcers, and there is no testimony that nutrition, hydration, or mobility had anything to do with surgical wound pain.

As a result, plaintiff is not entitled to damages on the claim

for pain and suffering damages or for actual compensatory damages against defendants.

**IV.  CONCLUSION**

Defendant's renewed motion for judgment as a matter of law is GRANTED, for the reasons stated herein.  The clerk is ordered to enter judgment for defendant pursuant to Rule 58.

IT IS SO ORDERED.

Dated this   29th   day of May, 2007, at Wichita, Kansas.

                                        S/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE